**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| REBECCA LEWIS, Individually and as *Ad Litem* on behalf of Decedent an Decedent's wrongful death beneficiaries, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | No. 4:17-cv-00538-NKL |
| | ) | |
| v. | ) | |
| | ) | |
| BLUE SPRINGS SCHOOL DISTRICT, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff Rebecca Lewis is the mother of Ryker Lewis. Plaintiff alleges that the Blue Springs School District, administrators, counselors, and teachers were aware of but failed to stop severe and pervasive bullying that her son experienced at school and that as a result, he committed suicide during his freshman year at the age of 15. The Blue Springs Defendants[1] now move under Fed. R. Civ. P. 12(b)(6) to dismiss the 14 counts pled against them, or in the alternative ask that Plaintiff be ordered to make a more definite statement. Doc. 21. The motion is granted in part and denied in part.

---

[1]     These Defendants are the Blue Springs School District; Paul Kinder, former Superintendent of the District; Kevin Grover, Principal of Moreland Ridge Middle School; Brandon Martin, Principal of Blue Springs Freshman Center; Jim Breske, a Counselor at the Blue Springs Freshman Center; Brett Lyon, Assistant Principal at Moreland Ridge Middle School; Mark Walkenhorst, a teacher at Blue Springs Freshman Center; Shelly White, a teacher at Blue Springs Freshman Center; and Judi Knipmeyer, a Counselor and 504 Coordinator at Moreland Ridge Middle School.

# I.    Background

The following facts are alleged in Lewis' complaint and accepted as true for purposes of resolving the Motion to Dismiss.[2]

Missouri law requires children to receive schooling until they are 16 years old.  Ryker lived in the Blue Springs School District, which included Moreland Ridge Middle School and the Blue Springs Freshman Center.  Ryker attended Moreland Ridge Middle School from 2010 through the spring of 2013, and then the Blue Springs Freshman Center from August 2013 until May 20, 2014 when he committed suicide at the age of 15.

Ryker had diagnoses of major clinical depression and attention-deficit disorder; was receiving therapy for a speech impediment; and participated in special education courses through the School District for several years.  The School District had created an Individual Education Plan for him due to his disabilities.  In the two years leading up to Ryker's death, he was repeatedly bullied on the school campus and in the halls and classrooms due to his mental health conditions and speech impediment, among other things.  He was called derogatory names and put in situations that were physically and psychologically dangerous.

Ryker's best friend Ethan, some of Ryker's other friends, and many other students also experienced bullying at school in the form of repeated physical and verbal abuse and harassment at school by other students who targeted them due to speech differences, popularity, disabilities, clothes, intelligence, athleticism, financial status, appearance, mental health conditions, etc.  For example, a student was bullied due to mental health problems by classmates at Moreland Ridge who hit him with basketballs during a gym class, and the bullying escalated when he began

---

[2]    For purposes of deciding a motion to dismiss for failure to state a claim, a court accepts the factual allegations contained in the complaint as true. *Eckert v. Titan Tire Corp.* 514 F.3d 801, 806 (8th Cir. 2008).

attending the Freshman Center, where he was pushed and punched and had books knocked out of his hand during passing periods. The student eventually received inpatient care at a psychiatric facility and later began receiving homebound services as a result of what he experienced at school. Bullying also affects bystanders and friends of the victims who witness it, because they often feel afraid and powerless to stop it.

The Blue Springs School District had in place anti-bullying departmental rules, regulations, and policies, but the Blue Springs Defendants did not follow them. At no time during his schooling in the Blue Springs School District did any teacher or other staff member ever acknowledge to Ryker or his parents that bullying existed within the District, nor was Ryker ever given protection from his classmates' treatment of him. The Defendants treated bullying as teasing or kids being kids, or something that should be ignored by the victim, or ignored complaints of bullying unless they were provided with a name, place and time. The Defendants' approach to bullying led to a culture in which bullying was a right and victims felt powerless, and an environment that was not reasonably safe for all students. The Defendants' response to Ryker's problems with other students made Ryker feel hopeless, caused him to fear for his safety and well-being, and gave him and the students who were bullying him the false impression that he was the problem because he was different, and that the other students' behavior was acceptable. The Defendants' failure to remove Ryker's bullies from the school environment enabled the harassment and bullying to continue and served to encourage the bullying acts to continue to be directed toward Ryker on a repeated basis.

Some of Ryker's friends attempted suicide, and in the 2013-2014 school year Ryker's best friend, Ethan, committed suicide, due to bullying at school. Students complained to the Blue Springs Defendants about the bullying that Ethan had experienced and the Defendants'

failure to follow the District's anti-bullying rules, regulations, and policies, but the students' complaints were ignored or minimized. Parents also repeatedly reported acts of bullying, sexual harassment, and discrimination to the Blue Springs School District after Ethan's death and prior to Ryker's death. Bullying increased during the 2013-2014 school year, due to the Defendants' failure to address it.

Ryker attempted suicide after Ethan's death. Both before and after Ryker's attempt, he was told by more than one student on more than one occasion to "go ahead and kill yourself" or to kill himself like his best friend had, or was taunted in some other humiliating way. Doc. 1-2, pp. 17, 19-20, and 22. For example, the Thursday prior to his suicide attempt, three students approached him in the cafeteria and told him, "Kill yourself." *Id.,* p. 20. Ryker felt humiliated and did not want "to live because of the bullying and harassment he was experiencing from students, particularly the ones who were telling him to 'go kill yourself.'" *Id.*, p. 19. He was admitted to an inpatient treatment center after his suicide attempt and reported to staff that the source of his suicidal feelings stemmed from being bullied at school, including that he was told to kill himself. The treatment center told the school what Ryker had reported.

Although the Blue Springs School District Defendants knew about Ryker's suicide attempt and knew it was because of bullying at school, they failed to properly or effectively respond "to the severe, pervasive, and persistent harassing conduct of students, in violation of" the District's rules against bullying, and had "actual knowledge" that their efforts "to remediate bullying, sexual harassment, and discrimination were ineffective, but continued to use those same methods[,]" *id.,* pp. 20-21, paras. 111 and 114.

Defendants' actions and inactions in addressing bullying at school directly caused or contributed to cause Ryker severe mental anguish and worsened his depression and suicidal

thoughts, and Ryker committed suicide on May 20, 2014. The Blue Springs Defendants' treatment of bullying and complaints of bullying in the school, their response to Ethan's death, their response to complaints of bullying after Ethan's death, and their response to the bullying that Ryker experienced caused or contributed to cause Ryker to take his own life.

The Blue Springs School District was also sued for wrongful death in 2009 following the suicide by hanging of another Blue Springs student, Brandon Myers. Brandon's parents claimed that Brandon committed suicide due to years of repeated bullying at school and the District's failure to take any action despite complaints. The District settled the case in 2012. As part of the 2012 settlement with Brandon's parents, the District promised or contracted with Brandon's parents to provide additional training to administrators regarding bullying, to hold an anti-bullying day each year, and to implement a suicide-prevention program throughout the District. The District either failed to provide the additional training or its administrators failed to follow the District's rules despite the training. The District also failed to timely hold its anti-bullying day and failed to launch a suicide prevention program. *Id.,* pp. 26, paras. 141-42.

Plaintiff's 16-Count petition contains the following Counts against the Blue Springs Defendants:

I.      Violation of Ministerial Duties (Blue Springs Defendants)

II.     Breach of Contract (Blue Springs School District)

III.    Discrimination in Public Accommodations Under Mo. Rev. Stat. § 213.065 (Blue Springs Defendants)

IV.     Wrongful Death—Negligence (Blue Springs School District)

V.      Negligent Infliction of Emotional Distress (Blue Springs School District)

VI.     Wrongful Death—Negligence (Defendants Kinder, Grover, Lyon, Knipmeyer, Breske, Walkenhorst, and Martin)

VII.     Negligent Infliction of Emotional Distress (Defendants Kinder, Grover, Lyon, Knipmeyer, Breske, Walkenhorst, and Martin)

IX.     Wrongful Death Under Title IX, 20 U.S.C. § 1681 and Section 504 of the Rehabilitation Act (Blue Springs School District)

X.     Wrongful Death Under 42 U.S.C. § 1983, Deprivation of Federal Rights (Blue Springs Defendants)

XI.     Wrongful Death Under 42 U.S.C. § 1983, State-Created Danger (Blue Springs Defendants)

XII.     Wrongful Death Under 42 U.S.C. § 1983, Supervisory Liability for Participation in and Encouragement of Misconduct by Subordinates (Defendants Kinder, Grover, Martin, and Lyon)

XIII.     Wrongful Death Under 42 U.S.C. § 1983, Denial of Substantive Due Process Through Failure to Train and Supervise (Blue Springs School District)

XIV.     42 U.S.C. § 1983, Denial of Substantive Due Process Through Policy, Custom, and Practice of Failing to Respond to or Prevent Bullying in Its Schools (Blue Springs School District)

XVI.     Aggravating Circumstances—Punitive Damages (Blue Springs Defendants)

## II.     Discussion

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim.  *Scheuer*, 416 U.S. at 236.  A viable complaint must include "enough facts to state a

claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint is plausible if its "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal,* 556 U.S. at 678). A complaint that offers labels, bare assertions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," is insufficient to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A.    **Count I, Violations of Ministerial Duties (Blue Springs Defendants); Count IV, Wrongful Death—Negligence (Blue Springs School District); Count V, Negligent Infliction of Emotional Distress (Blue Springs School District); Count VI, Wrongful Death—Negligence (Defendants Kinder, Grover, Lyon, Knipmeyer, Breske, Walkenhorst, and Martin); and Count VII, Negligent Infliction of Emotional Distress (Defendants Kinder, Grover, Lyon, Knipmeyer, Breske, Walkenhorst, Martin, and White)**

Defendants state that Counts I, IV, V, VI, and VII fail to state a claim and do not contain sufficient factual allegations. Defendants list elements of claims of negligence and intentional infliction of emotional distress. Doc. 27, p. 14 of 26 (citing *Gillis v. Principia Corp.,* 111 F.Supp.3d 978, 988 (E.D. Mo. 2015)). They then argue: "For example, Plaintiff fails to include facts establishing that the Defendants should have realized their conduct involved an unreasonable risk of causing the distress, among other things. Plaintiff offers conclusory allegations as to the elements of her claims, rather than factual support. The same holds true for the claim in Count I." Doc. 27, p. 15 of 26. Plaintiff responds that the "Petition sufficiently sets forth her claims of negligence and the violations of ministerial duties[.]" Doc. 36, p. 8.

1.    **Counts IV and VI for Negligence**

"Any action for negligence requires the plaintiff to establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the plaintiff's injury was proximately caused by the defendant's failure." *Jarrett v. Jones,* 258 S.W.3d 442, 448

(Mo. banc 2008) (citing *Krause v. U.S. Truck Co., Inc.,* 787 S.W.2d 708, 710 (Mo. banc 1990)).

In Counts IV and VI, Plaintiff alleges that the Blue Springs School District and the individual defendants each had a duty to possess and use the same degree of are ordinarily used by reasonable and careful school districts, administrators and teachers to properly supervise their students and to protect them from foreseeable and unreasonable risks of harm posed by other students under the School District's custody and control. Doc. 1-2, pp. 44-45, para. 220; pp. 50-51, paras. 242-251.

Plaintiff also alleges that the Defendants breached their duty by failing to follow their policies; systematically and repeatedly failing to discourage, acknowledge, or investigate bullying, which in turn increased and intensified the bullying the Ryker experienced; failing to protect Ryker from his abusers or to discipline them although the school could exercise control over its students through the discipline policy; failing to monitor classrooms and the school for physical and verbal abuse and other forms of bullying versus teasing; failing to follow up on reports by parents and others of bullying problems; and reinforcing the idea to Ryker that he was to blame for or deserved abuse, and had to be willing to point out his abusers; etc. *Id.*, pp. 42-43 (Count IV); pp. 53-54 (Count VI). Plaintiff further alleges that the Defendants' breach caused or contributed to cause Ryker's death and severe mental anguish that he suffered prior to his death, in that the students kept engaging in bullying acts directed at Ryker, the incidents of bullying increased in frequency and intensity, etc. *Id.,* p. 47 (Count IV); p. 54 (Count VI). These allegations are sufficient pleaded to state claims of negligence.

Therefore, the motion to dismiss Counts IV and VI is denied.

### 2.    Counts V and VII for negligent infliction of emotional distress

Defendants argue that an action for negligent infliction of emotional distress requires the

plaintiff to establish the negligence elements, addressed above, and, where the plaintiff is a victim of the defendant's negligence, to establish two additional elements: (1) that the defendant should have realized his conduct involved an unreasonable risk of causing the distress, and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant. *See* Doc. 27, p. 14 of 26 (citing *Gillis,* 111 F.Supp. 3d at 988). *See also Jarrett,* 258 S.W.3d at 448 (citing *Bass v. Nooney Co.,* 646 S.W.2d 765, 772–73 (Mo. banc 1983) (elements of negligent infliction of emotional distress); and *Biersmith v. Curry Ass'n Mgmt., Inc.*, 359 S.W.3d 84, 89 (Mo. App. 2011) ("It is no longer necessary in Missouri that a plaintiff claiming negligent infliction of emotional distress prove a contemporaneous traumatic physical injury.") (citation omitted)).

In Counts V and VII, Plaintiff alleges that the Blue Springs Defendants had a duty to protect Ryker under district rules and policies including the anti-bullying policy, anti-sexual harassment policy, and anti-discrimination policy; state law, Mo. Rev. Stat. §§ 160.261.1 (requiring districts to have disciplinary policies), 160.775 (requiring districts to have anti-bullying policies), and 213.065 (discrimination prohibited under the Missouri Human Rights Act) and regulations; Federal laws, e.g., Title IX, 20 U.S.C. § 1681, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983; and had a duty to properly supervise its students and protect students from foreseeable and unreasonable risks of harm posed by students under the District's custody and control. Doc. 1-2, p. 49 (Count V); and p. 55 (Count VII).

Plaintiff alleges that the Defendants breached their duties by failing to follow their policies; systematically and repeatedly failing to discourage, acknowledge, or investigate bullying, which in turn increased and intensified the bullying Ryker experienced; failing to protect Ryker from his abusers or to discipline them; failing to monitor classrooms and the

school for physical and verbal abuse and other forms of bullying versus teasing; failing to follow up on reports by parents and others of bullying problems; reinforcing the idea to Ryker that he was to blame for or deserved abuse, and had to be willing to point out his abusers; etc. *Id.*, p. 49 (Count V); and p. 55 (Count VII). Plaintiff further alleges that the Defendants' breach caused or contributed to cause Ryker's death and severe mental anguish that he suffered prior to his death, in that the Defendants should have known that continuous abuse by classmates cause victims to suffer from lack of motivation at school, increased absenteeism, eating disorders, chronic anxiety, depression, psychiatric problems and suicidal tendencies, and that "this suffering becomes worsened through inaction of the school personnel," and the Defendants' actions and inactions caused or contributed to cause harm to Ryker and led to his death. *Id.,* p. 49 (Count V); and p. 56 (Count VII). These allegations are sufficient to state claims of negligence.

As for the additional elements required to state a claim of emotional distress, Count V against the Blue Springs School District contains the allegation that "Decedent suffered medically significant and diagnosable emotional distress as a direct and proximate result of the Blue Springs School District's negligent and careless acts and omissions," Doc. 1-2, p. 49, para. 235, and does not expressly mention unreasonable risk. Count VII against other Blue Springs Defendants does not expressly mention either of the two additional elements. The absence of express reference to the elements does not mean that Counts V and VII must be dismissed. Courts must assess the plausibility of a given claim with reference to the allegations as a whole. *Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n. 4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens,* 619

F.3d 867, 872–73 (8th Cir. 2010).

The Court concludes that the Petition as a whole contains sufficient factual allegations to put the Defendants on notice of the claims for negligent infliction of emotional distress, including the elements of unreasonable risk of causing the distress, and that the emotional distress or mental injury caused was medically diagnosable and sufficiently severe as to be medically significant. Plaintiff alleges in the Petition that students were under the custody and control of the Defendants; that Defendants had in place rules and policies regarding bullying and discipline but failed to follow them, creating a culture in which bullying was accepted as the norm and victims of bullying felt powerless and hopeless, and which caused bullying to escalate; the bullying to which Ryker was exposed occurred for at least two years prior to his death and was severe, pervasive, and continuous; that other students attempted to and did commit suicide as a result of bullying, and Defendants were aware that they had done so; that Ryker had depression, a speech impediment, and received special services, which Defendants knew; that Ryker attempted to commit suicide because he felt hopeless due to bullying and was treated in a psychiatric facility as a result, which Defendants knew; and that Defendants did not take action to investigate or prevent bullying, notwithstanding what they knew. The Petition contains sufficient allegations to support the element of unreasonable risk of causing the distress in view of Defendants' alleged actions and inactions, and the element of medically diagnosable and medically significant distress, in view of Ryker's depression, inpatient treatment, and suicide. Accordingly, the allegations are sufficiently pleaded to state a claim for negligent infliction of emotional distress.

Therefore, the motion to dismiss Counts V and VII is denied.[3]

---

[3]     On reply, Defendants argue for the first time with respect to the common law tort

### 3. Count I

Defendants cite no authority in their motion to dismiss with respect to Count I, which they challenge in the same section as Counts IV, V, VI, and VII. Rather, after citing the elements of negligence and negligent infliction of emotional distress, arguing that Plaintiff failed to include facts as to unreasonable risk and stating that the allegations are conclusory, Defendants state only, "The same holds true for Count I." Doc. 27, p. 15 of 26.

In Count I, Plaintiff alleges that Defendants had ministerial duties as mandated by departmental rules, statutes, or regulations, and that Defendants violated them. Plaintiff alleges, for example, that under the anti-bullying policy,

> Bullying is strictly prohibited. Bullying is defined as acts committed repeatedly and systematically with the intention to make, or which have the effect of making, another person feel intimidated, threatened, fearful or apprehensive for their safety, humiliated, degraded, ostracized or excluded, subservient to another person, less important, or unworthy because of physical appearance, socioeconomic status, academic ability, sexual identity, or other characteristic. Prohibited bullying acts include but are not limited to name calling, taunting, physical movements or aggression, social exclusion, teasing, pranks, gestures, physical attacks, demeaning comments, rumors, and ridicule. Acts of bullying may be committed verbally, nonverbally, physically, in writing, electronically by email or on the Internet, phone messages, text messages, or any other medium of communication or expression. A person violates this policy by willfully committing an act of bullying, or by knowingly participating in, aiding, assisting or encouraging any act of bullying. Students who believe they are victims of bullying should immediately report the incident(s) to a teacher, coach, counselor or administrator. (a) First

---

claims, Counts VI, V, VI and VII, that an independent, intervening cause breaks the causal connection between Defendants' allegedly negligent acts and Ryker's death, and that there are more likely obvious alternative explanations for the direct cause of his suicide and such explanations are found in the pleadings. They also argue for the first time that a zone-of-danger analysis–used to determine whether a bystander plaintiff may recover damages for negligent infliction of emotional distress, *see Asaro v. Cardinal Glennon Memorial Hospital,* 799 S.W.2d 595 (Mo. banc 1990)—should be applied. Doc. 39, pp. 6-7. Because these arguments are raised for the first time on reply, the Court will not address them.

> Violation: Suspension for one hundred eighty (180) days or less or any other punishment the superintendent of schools deems appropriate. (b) Second Violation: Expulsion.

Doc. 1-2, p. 35, para. 170 and p. 24, para. 129 (the anti-bullying policy). But, Plaintiff alleges, Defendants did not follow their policy. Plaintiff also alleges that Defendants failed to report and follow up on incidents of bullying as required by Missouri statute, Mo. Rev. Stat. § 160.775, or to report to law enforcement the harassment occurring at school as required under Mo. Rev. Stat. § 160.261.1(24). Doc. 1-2, para. 170, p. 35, and pp. 22-24 (concerning the statutes). She further alleges that the Defendants' failure to follow them directly caused or contributed to cause Ryker's death. *See id.*, pp. 35, paras. 171-179. Insofar as Plaintiff's claim under Count I is that Defendants allegedly breached ministerial duties under the departmental rules or policy, and Mo. Rev. Stat. § 160.775 and Mo. Rev. Stat. § 160.261.1(24), which thereby led to injury, Plaintiff has alleged sufficient facts. Defendant has not addressed whether a legal cause of action exists with respect to such a claim.[4]

Plaintiff also cites as sources of ministerial duties Mo. Rev. Stat. § 213.065 (discrimination prohibited under the Missouri Human Rights Act); Title IX, 20 U.S.C. § 1681; Section 504 of the Rehabilitation Act; and 42 U.S.C. § 1983. Doc. 1-2, p. 35. The causes of action provided under these statutes are the subject of other Counts in the Petition, *i.e.,* Count III—violation of Mo. Rev. Stat. § 213.065; Count IX—violation of Title IX and Section 504; and Counts X-XIV—violations of 42 U.S.C. § 1983. Therefore, Count I is dismissed to the extent that it duplicates those other counts. In all other regards, the Motion to Dismiss Count I is denied.

---

[4] Defendants argue for the first time on reply that the anti-bullying policy is not remedial. Because this argument is raised for the first time on reply, the Court will not address it.

**B.    Count II, Breach of Contract (Blue Springs School District)**

With respect to Count II, Defendants argue that the Petition does not "contain sufficient factual matter to state a claim for relief that is plausible on its face.  For example, Plaintiff does not include facts establishing there were mutual obligations under the terms of the contract, or what the mutual obligations might be, among other things.  All Plaintiff offers are conclusory allegations relating to some elements of her breach of contract/third-party beneficiary claim." Doc. 27, p. 14 of 26.  Plaintiff responds that read as a whole, the Petition contains sufficient factual allegations to support this Count.  Doc. 36, p. 7.

The Petition alleges that the Blue Springs School District was sued for wrongful death in 2009 following the suicide by hanging of another Blue Springs student, Brandon Myers. Brandon's parents claimed that Brandon committed suicide due to years of repeated bullying at school, and the District's failure to take any action despite complaints.  The District settled the case in 2012.  As part of the settlement, the District promised or contracted with Brandon's parents to provide additional training to administrators regarding bullying, to hold an anti-bullying day each year, and to implement a suicide-prevention program throughout the District. The District either failed to provide the additional training or its administrators failed to follow the District's rules despite the training. The District also failed to timely hold its anti-bullying day and failed to launch a suicide prevention program. Doc. 1-2, pp. 26-27.

Plaintiff further alleges in Count II that the "[t]erms of the settlement agreement clearly and directly express an intent to benefit an identifiable person or class of persons," "students being bullied or at risk for bullying," and that "[t]he Blue Springs School District promised to assume a direct obligation to the intended third-party beneficiaries of the settlement agreement, including but not limited to [Ryker,]… render[ing him] a primary third-party beneficiary."  *Id.*,

p. 38.  Plaintiff further alleges that a covenant of good faith and fair dealing is implied in every contract in Missouri, and that the District materially breached the promises it made to benefit students such as Ryker.

To state a cause of action for breach of contract, a plaintiff must allege: 1) the existence of an enforceable contract between the parties; 2) mutual obligations arising under the terms of the contract; 3) that defendant did not perform; and 4) plaintiff was thereby damaged from the breach.  *Rice v. W. End Motors, Co.*, 905 S.W.2d 541, 542 (Mo. App. 1995).  A third-party beneficiary is one who is not privy to a contract or its consideration, but who may nonetheless maintain a cause of action for breach of the contract.  *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo. 1993) (citation omitted). "Third party beneficiary rights depend on, and are measured by, the terms of the contract between the promisor and the promisee." *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 260 (Mo. 2002) (citation omitted).  "Although it is not necessary that the third party beneficiary be named in the contract, the terms of the contract must express directly and clearly an intent to benefit an identifiable person or class." *Id.*

With respect to existence of an enforceable contract, Plaintiff alleges that the Blue Springs School District was sued by the parents of another student who committed suicide and that the parties entered into a settlement.  A settlement agreement is a contract between the parties. *Constr. Indus. Laborers Pension Fund v. Wellington Concrete, LLC,* 2016 WL 7013038, *2 (E.D. Mo. Dec. 1, 2016) (citation omitted).  With respect to mutual obligations under the terms of the contract and breach, Plaintiff alleges that the parties settled the lawsuit and that as part of the settlement, the District promised to provide additional training to administrators regarding bullying, to hold an anti-bullying day each year, and to implement a suicide-prevention program throughout the District, but that the District did not keep these promises.  These

allegations are sufficient to put the Defendants on notice with respect to the elements of mutual obligations and breach.

Plaintiff further alleges that Ryker was a third-party beneficiary to the contract and was damaged by the breach. The agreement is not attached to the Petition, but Plaintiff alleges that the agreement's "[t]erms clearly and directly express an intent to benefit an identifiable person or class of persons," i.e., "students being bullied or at risk for bullying," and that "[t]he Blue Springs School District promised to assume a direct obligation to the intended third-party beneficiaries of the settlement agreement, including but not limited to [Ryker.]" Plaintiff alleges that the breach caused or contributed to cause Ryker's death, in that had the District undertaken to perform the promised actions, it would have made a difference in Ryker's feelings of unimportance and worthlessness, and would have helped the bullies. These allegations are sufficient to put the Defendants on notice with respect to the allegation of third-party beneficiary status and damage as a result of the breach.

The motion to dismiss is denied with respect to Count II.

### C.     Count III, Discrimination in Public Accommodations Under Mo. Rev. Stat. § 213.065 (Blue Springs Defendants)

Defendants argue four separate bases for dismissal of Count III, the claim under the Missouri Human Rights Act, including that the Plaintiff failed to adequately plead exhaustion of administrative remedies. With respect to exhaustion, the Petition alleges only: "Plaintiff's Decedent and Plaintiff have exhausted any applicable administrative remedies." Doc. 1-2. In response to the motion to dismiss, Plaintiff argues that the facts pled are sufficient to support a finding that any applicable administrative remedies were exhausted, or that exhaustion was not applicable, and that Defendants "do not set forth any support for the application of the requirement in a wrongful death case or even its availability." Doc. 36, p. 7.

The MHRA establishes a statutory cause of action for discrimination. However, the MHRA requires a plaintiff to exhaust his or her administrative remedies before filing suit. *Tart v. Hill Benham Lumber Co.,* 31 F.3d 668, 671 (8th Cir. 1994); *Jeffery v. St. Louis Fire Dep't*, 506 S.W.3d 394, 398 (Mo. App. 2016). In order to exhaust administrative remedies for a claim under the MHRA, "a party must timely file an administrative complaint with [the Missouri Commission on Human Rights] and either adjudicate the claim through MCHR or obtain a right-to-sue letter." *Stuart v. Gen. Motors Corp.,* 217 F.3d 621, 630 (8th Cir. 2000) (citing Mo. Rev. Stat. § 213.111(1)). The MHRA's exhaustion requirement is jurisdictional. Mo. Rev. Stat. § 213.075.1 (referring to the "jurisdictional precedent to filing a civil action under" the MHRA). *See also Hill v. St. Louis University,* 123 F.3d 1114, 1118 (8th Cir. 1997) (acknowledging the MHRA's jurisdictional bar where the plaintiff failed to timely file her administrative claim).

The Petition's allegation that Plaintiff "exhausted any applicable administrative remedies" is conclusory. Moreover, there is an applicable—and mandatory—exhaustion requirement under the MHRA, but the Petition contains no allegations about filing an administrative claim or other steps taken to exhaust administrative remedies under the MHRA. Accordingly, Count III is dismissed without prejudice.

**D.     Count IX, Wrongful Death—Title IX, 20 U.S.C. § 1681 and Section 504 of the Rehabilitation Act (Blue Springs School District)**

With respect to Count IX, Defendants argue that the Petition "fails to contain sufficient factual matter to state a claim for relief that is plausible on its face." Doc. 27, p. 16 of 26. They argue with respect to the Title IX claim that the Petition does not include facts establishing that Ryker was excluded from participation in or denied the benefits of, or subject to discrimination on the basis of sex, nor any facts establishing that he had a physical or mental impairment that substantially limited one or more of his major life activities. *Id.*, p. 17 of 26. They also state that

the Petition contains only "conclusory allegations concerning the elements of her Rehabilitation Act claim." *Id.* Plaintiff responds that the allegations, read as a whole, including "factual allegations that establish repeated and constant harassment, discrimination and bullying that the Defendants deliberately ignored and effectively encouraged," sufficiently support the claims. Doc. 36, p. 8.

### 1. Title IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiff alleges in Count IX that the harassment and bullying Ryker experienced "was due to his speech impediment, special individual education needs, [and] his mental health disability[.]" Doc. 1-2, p. 60, para. 284. Plaintiff does not allege that the harassment and bullying was due to sex. Therefore, the Title IX portion of Count IX is dismissed.

### 2. Section 504 of the Rehabilitation Act

To state a *prima facie* case under Section 504, a plaintiff must show that he or she (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on her disability. *M.Y., ex rel., J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008) (citation omitted). Additionally, a plaintiff must show that the discrimination reflected bad faith or gross misjudgment. *Id.* (citation omitted). An "individual with a disability" is "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). "Major life activities include: functions such as caring for

18

one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(c).

With respect to the first two elements, Plaintiff alleges in Count IX that Ryker had a speech impediment, special individual education needs, and a mental health disability, and elsewhere in the Petition alleges that Ryker was diagnosed with major depression. Plaintiff also alleges that the Defendants' actions and inactions prevented him from participating in and benefitting from an education in the Blue Springs schools, i.e., he required in-patient treatment due to his experiences with bullying and eventually committed suicide. The District also receives federal funds. The Petition contains sufficient allegations with respect to the first two elements.

With respect to the third element, the Petition alleges that the Defendants knew about Ryker's suicide attempt and hospitalization and that it was due to the hopelessness he experienced with respect to bullying, knew that other students had attempted to and did commit suicide for the same reasons, yet Defendants did nothing to address the bullying, instead treating bullying as teasing or kids being kids, and engendering in victims of bullying like Ryker the feeling that it was their fault and they could do nothing about it. The Petition contains sufficient allegations with respect to the element of discrimination on the basis of disability. The same allegations sufficiently support bad faith or gross misjudgment.

Therefore, the motion to dismiss is denied with respect to the Section 504 portion of Count IX.

### E. Count X, Wrongful Death—42 U.S.C. § 1983, Deprivation of Federal Rights (Blue Springs Defendants)

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived her "of rights, privileges, or immunities secured by the Constitution."

*Parratt v. Taylor,* 451 U.S. 527, 535 (1981).

Plaintiff alleges that Defendants were acting under color of state law. Therefore, the threshold inquiry is whether Defendants violated rights secured by the Constitution. Count X does not cite any provision of the constitution. Rather, it generally alleges that pursuant to a "custom, practice and policy," Ryker's "federally protected civil rights were violated…including" his "right to be free from discrimination on the basis of disability, including … a speech impediment and mental health ailment" and "right to be free from repeated act of bullying, in violation of his right to be in a safe place for his education." Doc. 1-2, p. 62, paras. 293-94. Count X further alleges that Defendant' acts and omissions were intentional, reckless, and/or reformed with a deliberate indifference to [Ryker's] well-being and deprived [him] of his constitutionally protected rights to be free from discrimination and/or bullying." *Id.,* para. 295.

Count X is simply so general and conclusory that it fails to state a claim for relief that is plausible on its face. Therefore, Count X is dismissed.

### F.      Count XI, Wrongful Death—42 U.S.C. § 1983, State-Created Danger (Blue Springs Defendants)

Under the state-created danger theory, a plaintiff must prove (1) he was a member of a limited, precisely definable group; (2) the defendant's conduct put the plaintiff at significant risk of serious, immediate, and proximate harm; (3) the risk was obvious or known to the defendant; (4) the defendant acted recklessly in conscious disregard of the right; and (5) in total, the defendant's conduct shocks the conscience. *Avalos v. City of Glenwood,* 382 F.3d 792, 798 (8th Cir. 2004). A court's focus should remain on the additional harm caused by the state's acts. *S.S. v. McMullen,* 225 F.3d 960, 963 (8th Cir. 2000). In other words, the threshold question is not whether the state could have prevented the plaintiff's injury, but whether the state acted in such a

way that the plaintiff was in no worse a position than if the state had done nothing. *See id.* If the answer to the latter question is "yes," there is no constitutional violation." *Id.*

The allegations of Count XI, construed in Plaintiff's favor, identify a limited, definable group of Blue Springs students including Ryker, who were bullied or who were bystanders to bullying. The Defendants' conduct put Ryker at significant risk of serious, immediate and proximate harm in that the bullying was severe, abusive, and ongoing, included students telling Ryker to kill himself, it happened when Ryker was only 14 or 15, Ryker did try to kill himself as did other students, and other students killed themselves due to bullying before Ryker finally did. The risk was obvious to Defendants because they were told numerous times by numerous people about the bullying, and knew about the suicide attempts and the suicides. They acted recklessly in conscious disregard of the right, in that despite their knowledge, and despite anti-bullying departmental rules, they failed to take any appropriate action. The Defendants' conduct shocks the conscience, inasmuch as the stakes—suicide or attempted suicide by a young student—were extreme, but they did nothing to address the bullying. The Defendants' conduct increased the risk of danger to Ryker, in that their failure to act on reports of bullying and creation of a culture in which bullying was accepted escalated the bullying, and caused victims to feel hopeless.

The motion to dismiss Count XI is denied.

### G. Count XII, Wrongful Death—42 U.S.C. § 1983, Supervisory Liability for Participation in and Encouragement of Misconduct by Subordinates (Defendants Kinder, Grover, Martin, and Lyon)

A supervisor may be liable under 1983 if he or she (1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to the plaintiff. *Livers v. Schenck,* 700 F.3d 340, 355 (8th Cir. 2012).

Plaintiff alleges that all Defendants had actual knowledge of the bullying that was happening in the school, and what had happened to Ryker.  In Count XII, Plaintiff alleges that Plaintiff Superintendent Kinder, Principal Grover, Principal Martin, and Assistant Principal Lyon had supervisory authority over teachers and other subordinates at the schools, and actually knew or should have known that their subordinates were placing students, including Ryker, in danger of severe, ongoing, and targeted bullying in violation of Ryker's rights of substantive due process under the Fourteenth Amendment. Despite this knowledge, they failed to implement or comply with anti-bullying policies and laws, or to intervene to prevent their subordinates' continuing pattern of unconstitutional misconduct and inaction toward Ryker and other students, which directly resulted in violation of Ryker's constitutional rights.

The allegations are sufficient to state a plausible claim.  Therefore, the motion to dismiss Count XII is denied.

**H.    Count XIII, Wrongful Death—42 U.S.C. § 1983, Denial of Substantive Due Process Through Failure to Train and Supervise (Blue Springs School District)**

Section 1983 liability for a constitutional violation may attach to a school if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise.  *See Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 690–91 (1978); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89 (1989). *See also C., ex rel. Connor v. Mo. State Bd. of Educ.,* 2009 WL 2928713, *5 (E.D. Mo. Sept. 8, 2009) (observing that the Eighth Circuit has routinely permitted school districts in Missouri to be sued under § 1983 and *Monell*) (collecting cases).

To state a claim for failure to train or supervise, Plaintiff must allege that (1) the District's training or supervisory practices were inadequate; (2) the District was deliberately

indifferent to the rights of others in adopting them, such that the failure reflects a deliberate or conscious choice by it; and (3) an alleged deficiency in the District's. training or supervisory procedures actually caused Plaintiff's injury. *Andrews v. Fowler,* 98 F.3d 1069, 1076 (8th Cir. 1996) (quotation and citation omitted).

Plaintiff alleges in Count XIII that empirical research has shown for the past 20 years that severe, ongoing, targeted bullying in schools is pervasive and routinely results in clinical depression, suicidal thoughts, and suicide among its targeted victims. Anti-bullying policies and law, when complied with, have been proven to reduce and prevent such bullying and transforms bulling cultures into positive and supportive school cultures. The District actually knew, or should have known, about the severe, targeted, ongoing bullying in its schools, in that it knew Ryker and his friends were victims of it for a few years prior to Ryker's death; knew that students and parents repeatedly complained to the District about bullying acts; knew of specific incidents of bullying and suicides in its schools; knew that the consistent and improper response of the Defendants was to ignore bullying; the District's employees were required to know of effective bullying prevention strategies; and despite its knowledge of the foregoing, the District failed to properly train its employees in effective ways to respond to and prevent bullying. Doc. 1-2, pp. 73-76. The failure to train and supervise was deliberately indifferent to and deprived Ryker of his rights, including his right to bodily integrity, to be secure and to be left alone, to his life, and his rights to substantive due process. *Id.,* p. 76.

The allegations are sufficient to state a plausible claim. Therefore, the motion to dismiss Count XIII is denied.

**I.     Count XIV, 42 U.S.C. § 1983, Denial of Substantive Due Process Through Policy, Custom, and Practice of Failing to Respond to or Prevent Bullying in Its Schools (Blue Springs School District)**

With respect to an unconstitutional policy, custom or practice, Plaintiff must allege a continuing, widespread, persistent, pattern of unconstitutional misconduct by the District's employees; deliberate indifference to or tacit authorization of such conduct by the District's policymaking officials after notice to the officials of that misconduct; and injury by acts taken pursuant to such custom, i.e., that the custom was the moving force behind the constitutional violation. *S.J. v. Kansas City, Mo. Pub. Sch. Dist.,* 294 F.3d 1025,1028 (8th Cir. 2002) (quotations and citations omitted).

In Count XIV, Plaintiff alleges that the District, including the school board and superintendents, at all times knew or should have known that there existed among administrators, counselors, and teachers a continuing, widespread and persistent pattern of failing to respond appropriately to bullying incidents, including those incidents in which Ryker or one of his friends was the victim or he was a bystander; and that there was a continuing, widespread and persistent pattern of administrators failing to implement or ensure compliance with the District's anti-bullying policy, rules, regulations and state laws meant to prevent bulling and at minimum ensure that appropriate responses to bulling incidents are made to avoid further harm towards a victim, including students like Ryker or his friends who were subjected to bullying.  Plaintiff alleges that the District, including the school board and superintendents at all times knew, or should have known, that such failures were causing its students, including Ryker, to suffer deprivation of their rights to a public education, bodily integrity, to be secure and to be left alone, to life, and to substantive due process.  Nevertheless, the District, including the school board and superintendents at all times maintained a practice of inappropriate and impermissible responses

to bullying incidents, rejected and did not comply with proven bullying prevention policies and laws, and allowed bullying incidents and culture to go unchecked in the schools. That the District allowed bullying incidents and culture to go unchecked in the schools, and incidents even increased because employees would not come to the aid of victims and even punished victims for defending themselves, this policy and practice was the moving force behind the deprivation of Ryker's rights, and caused or contributed to cause his death. Doc. 1-2, pp. 77-79.

The allegations are sufficient to state a plausible claim. Therefore, the motion to dismiss Count XIV is denied.

**J.       Count XVI, Aggravating Circumstances—Punitive Damages (Blue Springs Defendants)**

Defendants argue that Count XVI should be dismissed because there is no independent cause of action for punitive damages. The Court agrees and the Count is dismissed.[5]

**K.  Defendant's alternative request for a more definite statement**

Because the Court has determined that the claims that will not be dismissed are sufficiently pleaded, it will deny Defendants' alternative request for a more definite statement. Whether the claims can ultimately survive a motion for summary judgment remains to be seen. But they are sufficiently pleaded to give Defendants notice of the claims against them.

**III.    Conclusion**

Defendants' motion to dismiss, or in the alternative, for more definite statement, Doc. 21, is granted in part and denied in part. The following Counts or parts thereof are dismissed as indicated:

---

[5]      In their reply, Defendants argue that punitive damages are not available under the other counts of the Petition. Because this argument is raised for the first time on reply, the Court will not address it.

Count I–dismissed to the extent it duplicates other counts;
Count III—dismissed;
Count IX—the Title IX portion is dismissed;
Count X—dismissed; and
Count XVI—dismissed.

Defendants' alternative request for a more definite statement is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  November 2, 2017
Jefferson City, Missouri